IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| STANLEY OHLER, SR., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No. 10-771 |
| ) | Judge Nora Barry Fischer/ |
| ) | Magistrate Cynthia Reed Eddy |
| COUNTY OF FAYETTE, et al., ) | |
| ) | |
| Defendants. ) | |

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

### I. RECOMMENDATION

The Court considers here the Amended Complaint [ECF No. 65] filed pursuant to 42 U.S.C. § 1983 and Pennsylvania state law by pro se plaintiff, Stanley Ohler ("Ohler" or "Plaintiff"). Named as Defendants are Fayette County ("the County"); Nancy Vernon ("Vernon") , the former District Attorney for the County; Phyllis Ginn [1] ("Jin"), a County Assistant District Attorney; Wendy Williams Ohler ("Ms. Ohler"); and State Police Officer, John Marshall ("Marshall"). Pending is the Defendants' Motion to Dismiss [ECF No. 67] the Amended Complaint. The Court respectfully recommends that the Motion be granted, and that the Complaint be dismissed with prejudice with respect to the remaining Defendant, Ms. Ohler pursuant to the terms of 28 U.S.C. §1983.

### II. REPORT

**A. Background**

On July 11, 2007, Ms. Ohler, who alleged that she had been raped by Plaintiff, was evaluated at Frick Hospital in Mt. Pleasant, Pennsylvania. [ECF No. 3 at ¶¶ 17, 21]. Hospital staff contacted the State Police, and Marshall was dispatched to interview her. According to the

---
[1] Jin's name is incorrectly spelled "Ginn" in the Caption and in Plaintiff's pleadings. See [ECF No 67 at

1

Complaint, although there was "absolutely no evidence to support Ms. Ohler's claims," she and Marshall "enter[ed] into a verbal agreement to secure Plaintiff's conviction "under false pretenses all based upon their retribution towards plaintiff." [Id. at ¶20]. Plaintiff was taken into custody on July 13, 2007 and, because he could not afford to post bond, was detained until his acquittal on June 10, 2008. [Id. at ¶ 22].

In his original Complaint, Plaintiff alleged that prior to his trial, Ms. Ohler, Marshall, Jin and Vernon conspired to fabricate facts and withhold exculpatory evidence in furtherance of a frivolous criminal prosecution. [Id. at ¶¶ 23-24]. Plaintiff further alleged that Marshall committed perjury during the trial, that the County was vicariously liable for "the malicious acts of [its] representatives" and that the Defendants violated various state tort laws. [Id. at ¶ 45].

In a Motion to Dismiss the original Complaint, Jin and Vernon invoked absolute prosecutorial immunity with respect to all federal claims. See Imbler v. Pachtman, 424 U. S. 409, 430 (1976) (holding that prosecutors are entitled to absolute immunity for claims seeking money damages as result of actions taken as an "integral part of the judicial process."). Although it recognized the breadth of the prosecutorial immunity doctrine, the Court, evaluating Jin and Vernon's reliance on that doctrine, noted case law in which the Supreme Court has held that immunity does not apply to conduct outside the parameters of a prosecutor's traditional advocacy functions. Id. at 431. Though the Court concluded that the doctrine barred all claims against Jin and most of those against Vernon, it found that one [2] of Plaintiff's arguments was sufficient to survive the assertion of prosecutorial immunity – his contention that Vernon

---

[2]The Court concluded that Vernon, Jinn, and Marshall were entitled to prosecutorial immunity with respect to the state claims and the conspiracy claims. The Court failed, however, to consider the conspiracy claims against Ms. Ohler. The false arrest and imprisonment claims against Marshall were time-barred, and the remaining state claims against him were barred by principles of sovereign immunity [ECF No. 21at¶5; ECF No. 56 at 17, 18)]. All claims for declaratory and injunctive relief were dismissed. The tort claims against Fayette County were dismissed pursuant to the Pennsylvania Political Subdivision Tort Claims Act (PPSTCA"), 42 Pa. Con. Stat. Ann. § 8542, et seq.

2

violated section 1983 by failing to provide Jin with adequate training. The Court wrote that the failure to train "is clearly an administrative duty, and thus . . . Vernon is not shielded from liability under federal law." [ECF No. 56 at 7].

The Court thus addressed the elements of a failure to train claim, finding that that the allegations against Vernon were inadequate to satisfy even one of them. "The complaint is utterly devoid of 'enough facts to state a claim to relief that is plausible on its face' . . . and consequently, it should be dismissed." [Id. at 8 (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)]. "Plaintiff fails to identify . . . any specific training that was lacking at the District Attorney's Office, or how such training would have a causal nexus to his injuries." [Id.]

The Court also found that the failure to train claim against the County was fatally defective in that Plaintiff failed to allege facts sufficient to satisfy the elements of municipal liability under section 1983. First, he failed to allege that his constitutional rights were violated as a result of a County custom or municipal policy. [Id. at 13]. Next, the Complaint did not contain facts showing that the municipality was the moving force behind his alleged injury. Bd. of County Commr's of Bryan County, OK, 520 U.S. 397, 405 (1997). The Court wrote: "The language of the complaint implies that Plaintiff seeks to recover from Fayette County solely because it [employs] Vernon and Jin." [Id]. "It is well established that civil rights liability cannot be predicated solely on the operation of respondeat superior." [Id. citing Monell v. Dep't of Soc. Serv., 436 U.S. 658, 691 (1978)].

Despite these deficiencies, the Court found that it was not outside the bounds of possibility that Plaintiff could allege the facts necessary to state section 1983 failure to train claims against Vernon or the County. Therefore, it dismissed those claims without prejudice. [Id. at 13].

3

On April 18, 2011, Plaintiff filed an Amended Complaint [ECF No. 73] amplifying his failure to train claims against Vernon and the County.[3] He first alleges that Vernon acted with deliberate indifference in failing to train her subordinate, Jin, with respect to the rule governing exculpatory evidence announced by the Supreme Court in <u>Brady v. Maryland,</u> 373 U.S. 83 (1963). Specifically, Jin is alleged to have failed to "reveal and expose . . . favorable DNA evidence, a crime lab report and other exculpatory evidence to plaintiff's counsel." [ECF 65 at ¶26]. "The County and Vernon were aware of the training deficiencies [because of] the regular pattern [of] similar cases in the County and Vernon's office." [<u>Id.</u> at ¶20]. According to Plaintiff, discovery will show that at least eighty percent of Vernon's prosecutions were the results [sic] of similar [<u>Brady</u>] violations." [<u>Id.</u> at ¶31].

Plaintiff alleges that despite knowledge of this pattern, Vernon's office failed to provide formal in-house training regarding <u>Brady</u> responsibilities. Thus, the County "A.D.A.'s [sic] there [were] not familiar with the general rule of [<u>Brady</u>] that evidence favorable to the accused must be disclosed to the defense. This rule is directly written into the Pa. Rules of Professional Responsibility." [<u>Id.</u> at ¶¶ 27, 28].

**B. Standard of Review**

In deciding a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), the Court must accept as true all well-pleaded factual allegations and construe them in the light most favorable to the non-moving party. <u>Phillips v. County of Allegheny</u>, 515 F.3d 224, 228 (3d Cir. 2008). In <u>Phillips</u>, the United States Court of Appeals for the Third Circuit reiterated the pleading

---

[3] Plaintiff also reasserts entitlement to declaratory and injunctive relief and various allegations sounding in tort. These claims have been dismissed, and the reasons for their dismissal explained in detail. These claims were insufficient to survive the initial Motion to Dismiss, and are not revisited here.

requirements under Rule 12(b)(6) as explained by the Supreme Court in Twombly, 550 U.S. at 570 and Ashcroft v. Iqbal, 556 U.S. 662 (2009). See Phillips, 515 F.3d at 233–34. These motions are to be evaluated pursuant to a three-pronged approach. First, the Court must identify the elements essential to the plaintiff's cause of action. Second, the court evaluates whether the complaint sets forth factual allegations as opposed to conclusory statements; the former it accepts as true, and the latter it disregards. See Fowler v. UPMC Shadyside, 578 F.3d 203, 210–11 (3d Cir. 2009). Third, if the complaint sets forth factual allegations, the Court must determine whether they support a claim to relief that is plausible on its face. See Iqbal, 129 S.Ct. at 1950, 1953. The plausibility requirement is met when the plaintiff pleads facts that allow the court reasonably to infer that the defendant is liable for the misconduct alleged. Gelman v. State Farm Mut. Auto. Ins. Co., 583 F.3d 187, 190 (3d Cir.2009). This standard does not impose a probability requirement at the pleading stage, but instead requires that the facts alleged be sufficient to raise a reasonable expectation that discovery will reveal evidence of the necessary elements of the claims made. See Iqbal, 129 S.Ct. at 1949; Phillips, 515 F.3d at 234.

In addition, Congress significantly amended Title 28 of the United States Code, section 1915, which establishes the criteria for allowing a litigant to proceed in forma pauperis ("IFP"), i.e., without prepayment of costs. Section 1915(e) (as amended) requires federal courts to review complaints filed by persons proceeding IFP, and to dismiss, at any time, an action that is frivolous or malicious, fails to state a claim on which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2)(B).

Plaintiff is considered a "prisoner" as that term is defined under the Prisoner Litigation Reform Act ("PLRA), see 28 U.S.C. §§ 1915(h); 1915A(c), and has been granted IFP status in this action. Thus, Plaintiff's allegations must be reviewed in accordance with 28 U.S.C. §

5

1915(e)(2)(B). In reviewing complaints under §§ 1915 (e)(2)(B) and 1915A, federal courts apply the same standard governing motions to dismiss under Federal Rule of Civil Procedure 12(b)(6). See Powell v. Hoover, 956 F. Supp. 564, 568 (M.D. Pa. 1997) (applying Rule 12(b)(6) standard to claim dismissed under 28 U.S.C. § 1915(e)(2)(B)(ii)).

## C. Discussion

### 1. Conspiracy

In his Amended Complaint, Plaintiff reiterates his position that "all defendants" conspired against him "by engaging verbally into agreement to violate his rights." [ECF No. 65 at ¶ 11]. Addressing the Defendants' first Motion to Dismiss, the Court concluded that Vernon, Jin and Marshall were entitled to prosecutorial immunity with respect to conspiracy claims premised on section 1983, and, as to them, those claims were dismissed with prejudice. In evaluating the original Complaint, though, the Court failed to address the status of the conspiracy claim against Ms. Ohler, a private citizen. In the interest of compete discussion, the Court will do so here.

As a general rule, non-state actors who conspire with state actors may be liable under section 1983. See Dennis v. Sparks, 449 U.S. 24 (1980). This is not, however, the case where the state actor is entitled to immunity with respect to the conspiracy claim. See Morris v. Orman, CIV. A. No. 87-5149, 1988 WL 68093 at *3 (E.D. Pa. June 22, 1988) (rule that conspiracy claim survives where private citizen conspires with state actor does not apply where state actor possesses immunity). The Court will not undertake discussion of this principle in considering the conspiracy claim against Ms. Ohler because the conspiracy claims as a whole fail for a more fundamental reason.

In his Amended Complaint, Plaintiff asserts that the revised conspiracy allegations "will detail [the Defendants'] acts, motives and means further establishing their conspiracy." [Id. at ¶ 13]. They do not. In order for a section 1983 civil conspiracy claim to survive a motion to dismiss, the complaint must contain facts showing "agreement and concerted action." Capogrosso v. Supreme Ct. of N.J., 588 F.3d 180, 185 (3d Cir. 2009) (quoting Crabtree v. Muchmore, 904 F.2d 1475, 1481 (10th Cir.1990)). A plaintiff "must make specific . . . allegations of combination . . . or understanding among all or any of the defendants to plot, plan, or conspire to carry out the alleged chain of events." Sershen v. Cholish, No. 07-1011, 2008 WL 598111, at *7 (M.D. Pa. Feb 29, 2008); Pellegrino Food Prods. Co., Inc. v. Warren, 136 F.Supp.2d 391, 409 (W.D. Pa. 2000) (same); see also Garcia v. Police Officer John Doe No. 1-4, No. 01-2449, 2003 WL 22358442, at *3 (E.D. Pa. Sept.12, 2003) (instructing that plaintiff must "plead facts that touch on the period and object of the conspiracy and some actions taken in furtherance of the conspiracy"). "Only allegations of conspiracy which are particularized, such as those addressing the period of the conspiracy, the object of the conspiracy, and certain other action of the alleged conspirators taken to achieve that purpose will be deemed sufficient." Lucarelli v. Norton, No. 06-53, 2006 WL 709319, at *4 (M.D. Pa. Mar.17, 2006) (citing Panayotides v. Rabenold, 35 F.Supp.2d 411, 419 (E.D.Pa.1999)). "Mere incantation of the words 'conspiracy' or 'acted in concert' does not talismanically satisfy" the state action requirement. Garcia, 2003 WL 22358442, at *4; see also Abbott v. Latshaw, 164 F.3d 141, 148 (3d Cir. 1998) (stating that "conclusory allegations of concerted action" without "facts actually reflecting joint action" are insufficient to satisfy the state action requirement).

The vague and conclusory assertions set forth in Plaintiff's Amended Complaint leave uncorrected Plaintiff's failure in the original Complaint to satisfy the Twombly plausibility

7

standard. Plaintiff has alleged nothing in the Amended Complaint that would allow the Court reasonably to infer that Ms. Ohler participated in an agreement with any of the other Defendants, what the motive of the alleged conspiracy participants may have been, where or when agreement took place, or, for that matter, that any of the Defendants intentionally acted in concert with another. Gelman v. State Farm Mut. Auto. Ins. Co., 583 F.3d 187, 190 (3d Cir. 2009). The conspiracy claim set out in the Amended Complaint should be dismissed with prejudice as to all Defendants.

**2. Failure to Train**

   **a. Vernon**

Ohler argues that Jin failed to comply with her Brady obligations during the course of his trial, and that this failure resulted from the lack of training on the part of Vernon and the County. The Court turns first to the allegations involving Vernon.

A claim for supervisory liability or liability based upon a failure to train is established where: (1) an existing policy created an unreasonable risk of constitutional injury; (2) the supervisor was aware of the potential for this unreasonable risk; (3) the supervisor was deliberately indifferent to the risk; and (4) the injury resulted from the policy or practice. Sample v. Diecks, 885 F.2d 1099, 1118 (3d Cir.1989). It is not enough for Plaintiff to argue that the alleged injury would not have occurred if the supervisor had done more. He must allege specific acts or omissions that evidence deliberate indifference and suggest a plausible link between the act or omission and the ultimate injury. Diaz v. Carroll, 570 F. Supp. 2d 571, 577 (D.Del. 2008). Plaintiff frames his failure to train claim by alleging first that he was the victim of a Brady violation "caused by Vernon's deliberate indifference to an obvious need to train, monitor, or supervise her prosecutor, '[Jin].'" [ECF No. 65 at ¶16]. Plaintiff does not contend

that Vernon's liability is based on this single incident:[4] Plaintiff concludes the section of his Amended Complaint discussing failure to train with the following: "Discovery will produce evidence of pattern [sic] of similar Brady violations. The evidence is expected to show that at least 80% of Vernon's prosecutions were the results [sic] of similar Brady violations." [Id. at 32].

Although the Amended Complaint contains allegations of a pattern of Brady violations, they, too, are insufficient to save Plaintiff's failure to train claim. In Connick, the Supreme Court explained that "[a] pattern of similar constitutional violations by untrained employees is ordinarily necessary to demonstrate deliberate indifference for purposes of failure to train." 131 S.Ct. 1360 (internal quotation marks omitted); see also Jenkins v. Bartlett, 487 F.3d 482, 492 (7th Cir. 2007) (deliberate indifference in failure-to-train case can be shown by "a repeated pattern of constitutional violations that makes the need for further training ... plainly obvious to

---

[4] The Supreme Court's recent decision in Connick v. Thompson, __U.S.__, 131 S.Ct. 1350 (2011) clarifies that while "[h]ypothetically" and "in a narrow range of circumstances a plaintiff may be able to rest his failure to claim train on a single incident, the single incident theory does not apply "in the context of prosecutor's failures to turn over . . . exculpatory material to the defense, as required by Brady." Robinson v. Rome, No. 11-CV-1411 (NGG)(LB), 2011 WL 1541044, at *4 (E.D.N.Y. April 22, 2011) (citation omitted). The Court in Connick explained:

> Prosecutors are not only equipped but are also ethically bound to know what Brady entails and to perform legal research when they are uncertain. A district attorney is entitled to rely on prosecutor's professional training and ethical obligations in the absence of specific reason, such as a pattern of violations to believe that those tools are insufficient to prevent future constitutional violations in "the usual and recurring situations with which [the prosecutors] must deal.

Connick, 131 S.Ct. at 1363 (citation omitted). Plaintiff recognizes as much when he asserts that a prosecutor's Brady obligations are "directly written into the Pa. Rules of Professional Responsibility." [ECF No. 65 at ¶¶ 27, 28].

the city policymakers") (internal quotation marks omitted). Having alleged facts relating to a Brady violation in his case alone, Plaintiff cannot argue that he has established deliberate indifference by asserting facts showing a plausible "pattern" of Brady violations in the Fayette County District Attorney's office. In fact, Plaintiff has failed to allege facts suggesting that the due process rights of even one other defendant in Fayette County was subjected to a Brady violation. Thus Vernon cannot be held liable on the theory that lack of more extensive training for the County's district attorneys evinces a policy of ignoring defendants' due process rights.

      b. The County

As was the case with the original Complaint, Plaintiff's allegations of municipal liability are nothing more than conclusions that lack the factual support demanded by Twombly, Iqbal, and related cases decided by the United States Court of Appeals for the Third Circuit. Plaintiff's Amended Complaint does not come close to the factual specificity necessary to establish deliberate indifference on the part of the County.

### 3. The Alleged Brady Violation

This single issue, which was not raised or discussed by the Defendants or the Court in the context of the initial Complaint, mandates dismissal of the Amended Complaint in its entirety. The crux of Plaintiff's section 1983 claim is the alleged violation of his Fourteenth Amendment due process rights under Brady, 373 U.S. at 87. In Brady, "the United States Supreme Court held that 'the suppression by the prosecution of evidence favorable to the accused upon request violates due process where the evidence is material either to guilt or punishment' irrespective of the good or bad faith of the prosecutor." United States v. Wecht, Criminal No. 06-0026, 2007 WL 2343845 at *1 (W.D. Pa. Aug. 15, 2007) (quoting Brady, 373 U.S. at 87)). The materiality

requirement means that more than failure to disclose exculpatory material is necessary in order to establish a Brady – and, therefore, a Fourteenth Amendment violation. See Smith v. Holtz, 210 F.3d 186, 196 (3d Cir. 2000) (internal citation omitted).

> In the relatively rare likelihood that the defendant is acquitted, there is literally no Brady violation about which to complain. Since Brady's prejudice requirements looks to the probability of a more favorable outcome had the prosecutor not hidden the exculpatory evidence, a defendant who benefits from the most favorable outcome possible cannot point to a better result. The venal prosecutor's effort may have been in vain, but at least the loss at trial insulates her from any charge that she violated the defendant's constitutional rights.

Conditional Rules in Criminal Procedure: Alice in Wonderland Meets the Constitution, 26 Ga. St. U. L. Rev., 417 at 509 (2010). The case law is in accord. See Morgan v. Gertz, 166 F.3d 1307, 1310 n.1 (10th Cir. 1999) ("Regardless of any misconduct by government agents before or during trial, a defendant who is acquitted cannot be said to have been deprived of the right to a fair trial."); Flores v. Satz, 137 F.3d 1275, 1278 (11th Cir. 1998) (plaintiff who was never convicted cannot claim "the protections of Brady"); United States v. Bailey, 123 F.3d 1381, 1398 (11th Cir. 1997) (same).

The District Court for the Western District of Pennsylvania reached a similar result, citing the Supreme Court's decision in Strickler v. Greene, 527 U.S. 263, 281-82 (1999). See Gagliardi v. Fisher, 513 F. Supp. 2d 457, 490 (W.D. Pa. 2007) ("It is clear that more than a mere failure to disclose exculpatory evidence is required in order to establish a due process violation under Brady."). See also Leone v. Twp. of Deptford, 616 F. Supp.2d 527, 535 (D.N.J. 2009) ("It is axiomatic that a finding in [a defendant's] favor demonstrates that he received the process that he was due."); United States v. Wirtz, 357 F. Supp. 2d 1164, 1171 (D. Minn. 2005) ("Because of the acquittal, the alleged Brady violation did not occur . . . .").

The failure of Plaintiff's Fourteenth Amendment <u>Brady</u> claim dooms this lawsuit. Because he cannot establish a violation of his constitutional rights, he has no claim under section 1983, including those based on conspiracy and failure to train. In view of Plaintiff's acquittal, amendment of the <u>Brady</u> claim would be futile. As a result, Defendants' Motion to Dismiss the Amended Complaint should be granted with prejudice.

III. <u>CONCLUSION</u>

For the reasons detailed above, the Defendants' Motion to Dismiss the Amended Complaint [ECF No. 67] should be granted in its entirety, and all claims against Defendant Ms. Ohler dismissed with prejudice pursuant to the terms of the PLRA.

In accordance with the Magistrate's Act, 28 U.S.C. § 636 (b)(1)(B) and (C), and Rule 72.D.2 of the Local Rules for Magistrates, objections to this Report and Recommendation must be filed by November 18, 2011. Failure to file timely objections will waive the right to appeal. <u>Brightwell v. Lehman</u>, 637 F.3d 187, 193 n.7 (3d Cir. 2011).

Respectfully submitted,

<u>s/ Cynthia Reed Eddy</u>
Cynthia Reed Eddy
United States Magistrate Judge

Dated: November 4, 2011

cc: Counsel of Record via CM-ECF

Stanley Ohler
HR-0655
SCI-Mahoney
301 Morea Road
Frackville, PA 17932